273 So.2d 222

**Clarence ANTHONY**

v.

**STATE.**

**3 Div. 113.**

Court of Criminal Appeals of Alabama.

Oct. 24, 1972.

Rehearing Denied Nov. 21, 1972.

Jerry L. Cruse, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and Samuel L. Adams, Asst. Atty. Gen., for the State.

HARRIS, Judge.

From a conviction of robbery and a fifteen-year sentence imposed by a jury in the Circuit Court of Montgomery County, this appeal is prosecuted. We have before us a transcript of the record, a demurrer to the indictment, a motion to dismiss the indictment and discharge the defendant, a plea of former jeopardy, refused affirmative charges, and a motion for a new trial.

The basis for the motion to dismiss the indictment and discharge the defendant, and the plea of former jeopardy, arise out of the following facts:

On May 19, 1970, the defendant, attended by counsel of his choice, was arraigned upon the indictment and entered a plea of not guilty. The case was set for trial on June 8, 1970, and in open court in the presence of the defendant and his counsel, a special venire of twenty-five jurors was drawn from the jury box to be added to the regular jurors, seventy-five in number, theretofore drawn for the week in which this cause was set for trial. It was ordered that a list of the regular jurors, and those specially drawn, making a total of one hundred jurors, be forthwith served upon the defendant by the sheriff, together with a copy of the indictment.

On June 8, 1970, the date set for the trial of this case, the following order was made and entered by the trial judge:

"This cause being before the Court and the Court in its sound discretion being of

the opinion that the ends of justice would be defeated if the trial of this cause proceded in that the intent and purpose of the laws of the State of Alabama could not be enforced by the jury drawn to try the case, it is, therefore,

"ORDERED, ADJUDGED and DE-CREED that a mistrial be entered, this jury dismissed, and the Defendant held for trial at the next term of Court.

"DONE, this 8th day of June, 1970.

s/ Richard P. Emmet
JUDGE"

We now look to the motion to dismiss the indictment and discharge the defendant, which was filed on July 21, 1970, and denied by the court on July 23, 1970, and to the plea of former jeopardy, filed on August 10, 1970, to determine the reason for the entry of the mistrial and dismissal of the jury.

On the date set for trial, the judge proceeded to qualify the jury and asked the panel: "Do each of you subscribe to capital punishment? If you do not, please stand." Five jurors stood, indicating that they did not subscribe to capital punishment. The trial court did not further interrogate these five jurors "to find out whether their scruples would invariably compel them to vote against capital punishment." Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776.

In construing Section 57, Title 30, Code of Alabama 1940, which gives the State the right to challenge for cause jurors who state they have a fixed opinion against capital punishment, the Supreme Court of Alabama has held that a simple answer to a general question addressed to a prospective juror as to any "conscientious scruples" or "opposition" or "fixed opinion" against capital punishment is insufficient to excuse such juror upon a challenge because of such belief, opposition, or fixed opinion. Such venireman must be further

examined to sufficiently show that he would automatically vote against the imposition of the death penalty no matter what the evidence introduced at the trial might reveal. Otherwise, it cannot be assumed such would be his position. Liddell v. State, 287 Ala. 299, 251 So.2d 601; Howard v. State, 287 Ala. 435, 252 So.2d 304.

It is our opinion that since Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, the above cases and others of the same import can no longer be regarded as authoritative on this constitutional issue. Under *Furman*, the question of capital punishment is now moot.

The five jurors in this case who indicated their opposition to the imposition of the death penalty were not challenged in any manner and they remained on the "strike list." After the jury was struck and took their places in the jury box, they were given the usual oath by the Clerk. It was then discovered that one of the jurors who had voiced his opposition to capital punishment was among the twelve jurors. The court then recessed the case until 2:00 P. M. and sent the jury to lunch in charge of the court bailiff.

The trial judge then stated:

" 'One member of the jury was one of the very few of the 75 who stated that his moral conscience would not allow him to impose capital punishment. Knowing something of this case, I have never known a case in which capital punishment should not at least be asked for by the State. The State will have until 2:00, at which time this Court will adjourn to see if there is any possible way that this matter can be discontinued without running the risk of double jeopardy so that another panel can be more carefully drawn so that 12 jurors who at least believe in capital punishment will be given the opportunity to impose that punishment if they feel in their best judgment that that is what the punishment should be.' "

The court reconvened at 2:00, June 8, 1970. At that time, the Honorable Richard P. Emmet discharged the jury which had theretofore been selected.

It is not unreasonable to assume the mistrial was agreeable to appellant but that he entertained "second thoughts" later; hence his plea of double jeopardy which was filed on August 10, 1970. The record is entirely silent as to whether the plea was ever brought to the attention of the court and it is certain that no ruling of the court was invoked and no further action was had thereon.

■ The proper method to raise the issue of former jeopardy is by special plea. Carty v. State, 43 Ala.App. 57, 179 So.2d 333, cert. den. 278 Ala. 707, 179 So.2d 335; Circuit and Inferior Court Rules, rule 30; Title 15, Section 288, Code of Alabama 1940.

In Parsons v. State, 179 Ala. 23, 60 So. 864, the Supreme Court said:

"Under the established practice in this state, the issue of former acquittal, conviction, or jeopardy must be tried separately and in advance of the issue of not guilty; and in felony cases the defendant cannot waive the operation of the rule. State v. Nelson, 7 Ala. 610; Faulk v. State, 52 Ala. 415; Moody v. State, 60 Ala. 78. * * *"

For other cases dealing with this matter, see Inman v. State, 39 Ala.App. 496, 104 So.2d 448; Morris v. State, 47 Ala.App. 132, 251 So.2d 629; Artrip v. State, 41 Ala.App. 492, 136 So.2d 574; Lyles v. State, 41 Ala.App. 1, 122 So.2d 724.

When does jeopardy begin? In Scott v. State, 110 Ala. 48, 20 So. 468, the Supreme Court said, as to the time when jeopardy begins in a criminal case:

"A plea of former jeopardy was interposed on the trial of defendant, which is imperfect, but is stated to have been pleaded in short by consent, and issue was taken on it. In Bell v. State, 44 Ala. 393, the court said, as to the time when jeopardy begins in a criminal case: 'The weight of authority seems to be, that when the jury has been impaneled and sworn, and the indictment read, and pleaded to by defendant, he is entitled to have the trial proceed to its conclusion. If it is then interrupted by a discharge of the jury, or other insufficient legal cause, he cannot be tried again.' This principle we apprehend as a general proposition, cannot be questioned. It seems to be generally agreed that to constitute jeopardy, the cause or accusation should in some form be submitted to a jury impaneled to try it."

Turning again to the plea of former jeopardy, it is recited:

"The 12 jurors selected were seated in the jury box and sworn as provided by law by the Honorable John R. Matthews, Clerk of said Court. The jury was excused for lunch in the custody of the Bailiff, Honorable G. J. Rupenthal."

Appellant, in brief, says:

"In this case the jury had been selected, impaneled and sworn. There is no question as to the jurisdiction of the court or the validity of the indictment. The indictment had not been read to the jury, nor had the defendant made any plea to the indictment in the presence of the jury. There had been no opening statement."

Section 9, Constitution of Alabama 1901, provides as follows:

"That no person shall, for the same offense, be twice put in jeopardy of life or limb; but courts may, for reasons fixed by law, discharge juries from the consideration of any case, and no person shall gain an advantage by reason of such discharge of the jury."

Title 30, Section 100, Code of Alabama 1940, is as follows:

"The courts or presiding judges in all cases of jury trial may discharge the

jury without giving a verdict, with the consent of all parties to the trial, or without the consent of the parties, when in the opinion of the court or judge there is a manifest necessity for the discharge, or when the ends of justice would otherwise be defeated. In all cases, in which the jury is discharged, without a verdict, a mistrial shall be entered upon the minutes of the court, assigning the reason or cause for the mistrial; and no person shall gain any advantage by reason of such discharge of the jury."

There are many and sundry reasons to declare mistrials without running afoul of constitutional provisions. See Parham v. State, 47 Ala.App. 76, 250 So.2d 613; Spelce v. State, 20 Ala.App. 412, 103 So. 694.

In Andrews v. State, 174 Ala. 11, 56 So. 998, the Supreme Court wrote:

"Section 9 of the Constitution of 1901 embraced all of section 10, art. 1, of the Constitution of 1875 against twice in jeopardy, but in addition thereto provides: 'But courts may, for reasons fixed by law, discharge juries from the consideration of the case, and no person shall gain an advantage by reason of such discharge of the jury.' We cannot agree that this change in the organic law was made only to authorize the Legislature to provide by statute for the discharge of juries for the same and only reasons authorizing a discharge under the decisions of this court prior to the last constitutional enactment. To so hold would render the addition to section 9 of the Constitution nugatory, and section 7314 would be a useless enactment. We think that the constitutional change was made to extend the right to discharge juries for causes not then existing and to delegate to the Legislature authority to provide for a mistrial for any reason to be fixed by law. The Legislature did by section 7314, Code 1907, provide for the discharge of juries without the consent of the parties, when in the opinion of the court or judge there is a manifest necessity for the discharge, or when the ends of justice would otherwise be defeated, requiring that the reason or cause of discharge shall be entered upon the minutes of the court. The statute conforms to the Constitution and fixes the reasons for a discharge, to wit, when there is a manifest necessity for same, or when the ends of justice would otherwise be defeated.

"The statute does not authorize the trial court to fix the reason for the discharge, but merely authorizes him to determine whether or not the reason fixed by law exists. It was evidently not intended that the Legislature should undertake to define and write into the face of the statute what would and must constitute a necessity in every case or particularize the instances wherein the ends of justice would be defeated. The statute fixes the reasons for a discharge, and wisely leaves it to the opinion or discretion of the judge or court to determine whether or not the reason, as fixed by law for the discharge, really exists. If, therefore, a jury is discharged, and the reasons for doing so, as found and entered by the judge, are sufficient under the statute, this court will treat the same as conclusive, except, perhaps, in a case of fraud or a gross abuse of discretion."

■ The judgment entry, dated November 30, 1970, makes no mention of the motion to dismiss or the plea of former jeopardy. The judgment entry does recite " * * * and this being the date set for the trial of said cause, the defendant now in open court announces himself ready for trial on his plea of not guilty." Since the plea of former jeopardy, filed on August 10, 1970, was not brought to the attention of the court and insisted upon appellant knowingly abandoned said plea by announcing himself ready for trial on his plea of not guilty.

We do not agree with the reasons expressed by the trial court in declaring a mistrial in this case, wherein it is stated, "the court in its sound discretion being of the opinion that the ends of justice would be defeated if the trial of this cause proceeded in that the intent and purpose of the laws of the State of Alabama could not be enforced by the jury drawn to try the case \* \* \*." We do not believe the Legislature, by the enactment of Section 100, of Title 30, Code of Alabama 1940, intended to clothe trial judges with an unbridled discretion to enter mistrials simply upon looking over the personnel of a struck and an impaneled jury they entertain doubts that a desired verdict will be forthcoming. What we do hold today is that appellant had not been placed in jeopardy when the order of mistrial was entered.

The motion for a new trial raised the same matters set forth in the plea of former jeopardy but the motion was not kept "alive" and was, therefore, never submitted to the court for a ruling. Snell v. State, 278 Ala. 73, 175 So.2d 766, cert. den. 382 U.S. 896, 86 S.Ct. 190, 15 L.Ed.2d 153.

This record reveals an aggravated assault upon the victim, who was shot in the shoulder with a sawed-off shotgun and also suffered a knife wound in the back, resulting in a two-week confinement in the hospital. Around one hundred and fifty dollars was taken from the cash register after the shooting and knifing. The evidence amply sustained the conviction of robbery and appellant was not due the affirmative charge.

The indictment was in code form and not subject to demurrer.

This case is due to be affirmed.

Affirmed.

CATES, P. J., and ALMON, TYSON and DeCARLO, JJ., concur.